# McCoy, Administrator, &c. *v.* Nichols *et al.*

The statute providing "that judgments in any court of record in this state may be revived by *scire facias*, or an action of debt may be brought thereon within twenty years next after the date of such judgment," &c. includes within its operation the decrees of courts of chancery.

There being no privity between real and personal representatives of a deceased person, a judgment against the administrator is not evidence against the heir, unless the heir has been made a party to the suit.

When twenty years have elapsed after a decree, a court of chancery will not permit the administrator to take any step in relation to it that would prejudice the interest of the heir, or persons holding under him.

It is well settled, that when the statute of limitations begins to run, no intervening subsequent disability can prevent its operation.

Where the personal property is insufficient to pay the debts of the estate, or maintain the heir, the probate court may decree a sale of real estate, and when such decree is made, the presumption will be in favor of its regularity.

THIS is an appeal from the court of chancery.

From the record, it appears that John Eldergill and Arthur Carney had been partners in the mercantile business. That Eldergill, in the year 1802, commenced suit in the court of chancery, in the Mississippi territory, against Carney, for an account of the partnership effects, and for a decree of payment of the balance due him from Carney. In 1803, and before any decree was made, Carney died, and his widow administered his estate. She afterwards married John Cummins, who acted as administrator in right of his wife until 1812, when his letters were revoked. On the 6th of July, 1804, a bill of revivor was filed by Eldergill against Cummins and wife. There is no order of revival, however, on the record, nor any evidence of any step having been taken to make them parties. Eldergill died in 1807, and the suit was revived in the name of Prosper and Richard King, his administrators, with the will annexed. In 1812, the Messrs. King obtained a decree against Cummins and wife for the sum of $3,568 85. On this an execution was issued and levied on a tract of land belonging to the estate of Carney, which

was sold in 1813, under a *venditioni exponas*, and purchased by Prosper King for the sum of three thousand dollars, which was credited on the writ. Subsequently, Joseph Nichols and his wife, she being the daughter and sole heiress of Arthur Carney, brought an action of ejectment, and recovered the land which had been thus sold. Prosper and Richard King afterwards died, but at what time is not stated in the record, and James H. McCoy, the complainant in this bill, was appointed administrator *de bonis non* of Eldergill's estate. In 1834, he filed the bill of revivor in this cause, asking to have the decree which was rendered in 1812, against Cummins and wife, as administrators of Carney's estate, revived against Mrs. Nichols, the heir of Carney, and her husband, and that they be decreed to make payment of the same out of the proceeds of the sale of the aforesaid tract of land. The answer of Nichols and wife insists that the present proceeding is barred by the statute of limitations of twenty years, and that it cannot be revived against them, there being no privity whatever between Mrs. Nichols the heir, and the administrator of her father's personal effects, and also that there was a sufficiency of personal assets in the hands of the administrator to have satisfied the decree. In support of the last ground of defence, the answer refers to an exhibit containing the record of the final settlement of the account of the administrator in the probates court of Claiborne county, which shows a balance in his hands of assets amounting to the sum of $3,058 46. This settlement was made in 1804. The other exhibits in the cause are the last will and testament of Eldergill, appointing Prosper and Richard King the legatees of the claim against Carney—the record of the original decree which is now sought to be revived, and the record of the proceedings and judgment in the action of ejectment by Nichols and wife, in which they recovered the land.

Upon the hearing of the cause upon the bill, answer, and exhibits, the Chancellor dismissed the bill, and gave judgment against the complainants for the costs.

Holt for the appellees.

1. The decree sought to be revived, is clearly barred by the statute of limitations, more than twenty years having elapsed, as

appears from the bill, after the date of the decree, before the bill of revivor was filed.    Turner's Digest, 174—Revised Code, 185.

This is not a proceeding against the heir, upon the original contract of the ancestor.    If so, it would be barred by the statute of limitations, even if that contract rested upon specialty, instead of *in parol*, as it does.    And it would not be maintainable against the heir upon common law principles; the heir not being responsible at common law for the contracts of the ancestor, unless expressly bound, which principle is now in force in this state *sub modo*.    The only way in which the heir can be reached when not thus bound, being through the probate court, which upon a proper case made out from the failure of personal assets, may issue a citation against the heir, and upon hearing, may order a sale of the realty descended.

It is possible that the issue of execution upon a judgment or decree, may give it a kind of legal immortality, so that after any lapse of time, the effect of such judgment or decree may be had by a new execution, without resort either to an action of debt or *scire facias*.    If then, this bill were a proceeding against the administrator of Carney, it might be insisted, that he could not avail himself of the twenty years limitation, inasmuch as an execution might issue against him, (he having been a party to the decree,) without *scire facias* or action of debt, the only instances in which the statute seems to contemplate the application of the limitation as a bar.    But this is a proceeding against the heir, who was no party to the decree, against whom of course no execution could issue on it, and against whom the effect of the decree can be had (if at all) only by action of debt or *scire facias* or bill of revivor, which is the *scire facias* of the chancellor.    The limitation then applies in favor of the heir, although the language of the statute is "judgment of a court of record, &c.," a decree is embraced; for as regards the statute of limitations, equity always follows the law.    Kane *v.* Bloodgood, 7 J. C. R. 90.

In reply to the plea of the statute of limitations, it is urged by the counsel for the appellant that after the death of Richard and Prosper King, administrators of Eldergill, the statute ceased running until another administrator was appointed, and that the time during which there was a vacancy in the administration, should

be deducted in the computation of the twenty years. The contrary is believed to be the law. The weight of authority is, that when the statute begins to run, it continues notwithstanding any supervening disability. 1 Bibb, 181. 2 Bibb, 537. 1 Marshall, 376. 4 Bibb, 469.

But even were the rule different, it could not avail the appellant, because it no where appears by allegation or proof, what time elapsed from the death of the Kings' administrators to the appointment of appellant; of course, there being no *data* furnished, the court could make no deduction. The time should have been set forth with certainty. It may not have been a month. The statute makes exceptions in favor of *infants* and *femme coverts*,—it makes no exception in favor of an estate, because of a vacancy in the administration. "Enumeration excludes all not enumerated."

2. The ancestor (Arthur Carney) having been no party to the decree, it cannot be revived against the heir. A judgment or decree is binding upon all parties to it and privies, such as executors, administrators, heirs and assignees of the estate, upon the ground that they take the estate *cum onere.* And had this decree been pronounced against Carney in his lifetime, it might have been revived against his heir, who, in making defence could not have gone behind the decree. But Carney died, *pendente lite,* and the suit (if revived at all) was revived and the decree pronounced against his administrator alone, between whom and the heir there is no relation of privity which will enable the former to bind the latter by his acts. 6 J. C. R. 360, 373. Moore *v.* White, 6 Gill & Johnson 9, 10. 6 Monroe's Rep. 6, 7. 1 Mumford 437. 1 Starkie 192, (note.)

Instead then of a bill to revive a decree, to which neither the heir nor ancestor was a party, this should have been a proceeding, (if any at all could have been maintained,) upon the original cause of action.

3. The only ground upon which the interposition of the chancellor can be claimed, is, the alienation of the estate by the heir, for if the estate now belonged to the heir, the probate court would have ample jurisdiction over the subject, and it would become its duty when properly appealed to, to direct the sale of the realty of

the decedent by his personal representative, unless indeed the staleness of the demand should forbid, a consideration which would alike influence the chancellor and the probate court. That lapse of time such as the present case exhibits, will prevent an order of sale by the probate court, *vide* 6 J. C. R. 381, 385.

It has been held by high authority, that the probate court may pursue real estate into the hands of a vendee of the heir, who has purchased with notice of the outstanding debt. It is not alleged by appellant in his bill, that Going purchased of Nichols and wife, after they had succeeded against him in their action of ejectment, without notice. On the contrary, it is certain from his long continued connection with this property, that his notice was full and complete. It may, therefore, be well doubted, whether the remedy is not now ample at law, if one exist at all.

As the chancellor interposes on the ground of alienation by the heir, and in so doing acts only in the place of the probate court, if lapse of time would forbid the probate court to direct a sale, were the heir in possession, it will be equally fatal on an application to the chancellor, whose jurisdiction attaches in consequence of the alienation. For, I hold it to be clear that the chancellor will interfere after alienation, only in those cases where the probate court would have interfered before alienation.

A deficiency of personal assets, would alone have authorised the probate court to sell the real estate. Toulmin's Digest, 285-6. Cummins, as administrator, had in his hands in 1804, upwards of $3000, which, it is averred, he used and retained until long after the rendition of this decree in 1812. This sum, with the interest thereon accruing, was more than sufficient to have satisfied the decree. The record filed sustains the allegation of the answer in this particular. Had the heir of Carney, in 1812 or '13, been summoned under the statute referred to, to show cause why her patrimony should not be sold, she could have proved the existence of ample assets in the hands of the administrator, and the creditor would, upon this disclosure, have been compelled to sue the administrator for a *devastavit*. Can the same creditor, after a mysterious *laches* and slumber of more than twenty years, be allowed to subject the patrimony, by showing a deficiency of assets, not in 1812, but now? And after the ravages of time have swept off

McCoy, Administrator, &c. *v.* Nichols *et al.*

the witnesses, by whom in 1812, the heir could have so conclusively established the existence of a personal fund, sufficient to have discharged all debts?

4. The relief sought by cancelling the credit endorsed on the execution, and annulling the sheriff's sale, cannot be granted. The sale and return on the execution, amounted *pro tanto* ($3000) to a satisfaction of the decree. This sum was received by Eldergill's estate, which the appellant represents, and no intimation is given by him that he has been or can be called on to refund, either to the purchaser of the estate, or to any one else. In McGhee *v.* Ellis & Brown, 4 Littell's Rep. 247-8-9, the court after a most elaborate argument, decide that where no title passes to the purchaser, under a sheriff's sale, the plaintiff in the execution is not bound to refund the purchase money, the proceeds of the sale to the purchaser, but that the latter must seek his redress from the sheriff, for having sold him property, not subject to the execution. Of course then, Eldergill's administrator can have no ground of complaint, and can ask no relief, however irregular the sale may have been. If any person is aggrieved, and can complain, either to a court of common law or chancery, it is the duped purchaser, under a sale that conferred no title. That purchaser was Prosper King. He did not complain and seek a vacation of the sale and officer's return, in his life time, nor has his representative since his death. If cause of action be had, it was against the sheriff on his official bond, for selling him land that belonged not to the defendant in the execution. He had a right to waive that cause of action. He may have done so, or he may have compromised the matter with the sheriff, or have enjoyed the estate long enough to have reimbursed himself out of its rents and profits before the recovery of it by Carney's heir. Certain it is, if cause of suit exist any where, it is in Prosper King's representative, whose $3000 was sacrificed under a sale that passed no title, and not in Eldergill's representative, whose debt was paid, and still remains paid to that amount. There is neither fraud, accident, mistake, or trust to give the chancellor jurisdiction to erase and cancel a solemn record of court, in this collateral manner.

It is further believed, that the decree is against Cummins, in his personal capacity, and not as administrator. The language is

"ordered, adjudged and decreed, that the plaintiffs have and receive of the defendants two thousand three hundred and sixty three dollars, &c." The execution would have to pursue the decree, and would be against defendant personally, even if it should recite that he was administrator of Carney, it would be but "*descriptio personæ*" and would not authorise a levy upon Carney's estate, unless the decree so directed, which it does not. If a personal decree against Cummins, it will be admitted, it could not be revived against Carney's heir.

Chaplain on the same side.

Mr. Justice Trotter stated the case, and delivered the opinion of the court.

Three questions are presented for the consideration of this court. 1st. Whether the present suit is barred by the statute of limitations. 2d. Whether the decree can be revived against the heir. 3. Whether under the circumstances in this case the proceeds of the land can be applied to its payment.

The ninth section of the act of limitations in this state, Rev. C. p. 185, provides that judgments in any court of record in this state, may be revived by *scire facias*, or an action of debt may be brought thereon within twenty years next after the date of such judgment, and not after. Execution having been once sued out upon the decree in this cause, it might again issue at any time, as the law presumes it to be continued on the roll. It might, therefore, be in the power of the plaintiff, perhaps, to sue out an alias writ of *fi. fa.* on this decree, without resorting to any process to revive it. But he could have execution only against the parties to it. This rule cannot then benefit the complainant, because the heir against whom execution is sought, is not a party to the decree, nor is she in any way a privy to the same. It is not evidence by which she can be bound, and she is consequently unaffected by any proceedings which have been had under it. It is thus a decree sought to be revived against a third person, and is completely within the operation of the statute. Its being a decree in chancery, and not the judgment of a court of common law can make no difference. A decree is the judgment of the chancellor, and as such a judgment of a court of record, and is within

McCoy, Administrator, *v.* Nichols *et al.*

the statute. The limitation at law is always adopted in an analogous case in equity. For equity follows the law in this respect. Ambler, 645, 9th Cowen 530; 10th Wheaton, 152; 7th John. Ch. Rep. 90. The death of the administrator appears to have been relied on as an answer to the statute. The statute began to run from the date of the decree. The administrator was then living, and his subsequent death cannot defeat the operation of the act. It is well settled that when the act begins to run, no intervening, subsequent disability can prevent it from continuing to run. In the case of Beauchamp *v.* Mudd, 2 Bibb, 537, the creditor died after the statute had begun to run, and it was insisted that it should stop running from his death, and only begin again to operate when the disability to sue was removed by the appointment of his administrator. But the court held that it must continue to run. The same point was held in the case of Langford's administrator *v.* Gentry, 4th Bibb, 469. This case is not within any one of the exceptions contained in the proviso to the act of this state. It is, therefore, clearly barred by the limitation it imposes. But if the exception here relied on was in any case allowable, it could not avail the complainants; because they have not designated at what time the administrator died. He may have lived two years after the decree, and the same would still be barred by the limitation of twenty years, there being twenty-two years from the date of the decree, to the time of filing the bill. This case is, then, in this respect, like that in 1st Bibb, 181. The second objection is equally fatal to this proceeding. It is a rule too well settled to be controverted, that there is no *privity* between the real and personal representatives of a deceased person. Hence, a judgment against the administrator is not evidence against the heir, where he has not been made a party to the action. Nor can the real estate be charged to satisfy such judgment. 1 Starkie's Evid. 192. 1 Mumford, 437. The reason of this rule is founded in wisdom and the clearest principles of justice. The administrator takes only the personal estate. The heir takes the land. If a judgment against the former could bind the land, it would be in the power of the administrator, by collusion and fraud to ruin the heir. The land in the hands of the heir cannot be made subject to the payment of debts until the personal assets

McCoy, Administrator, *v.* Nichols *et al.*

have proved insufficient. But the judgment or decree against the administrator furnishes no proof of that fact. Had the decree relied on in this case, been rendered against Carney, the ancestor of Mrs. Nichols, it would bind the heir on account of the privity of blood, and she could not go behind it. The ancestor represents the heir, but this cannot be said of the executor or administrator. If the heir can be charged at all, it must be on the original consideration.

We also think that the third ground of objection to this cause is conclusive against the relief here sought. The ground laid for the interposition of the court of chancery, is the alienation of the land by the heir. The court of probate has power to grant a license to the executor or administrator to sell the lands, where the personal property is not sufficient. But that court, we apprehend, would not listen to an application of that sort under the proof in this cause, if the land was yet in the possession of Mrs. Nichols. And for the same reason the chancellor must refuse to apply the moneys arising from the sale to the payment of the decree. Neither the probate court, nor the court of chancery could entertain a suit founded on the original consideration of the decree against Carney's administrator. It is long since barred by lapse of time. The decree is no evidence against the heir, and after the lapse of twenty-two years since its rendition, the court of chancery would not permit the administrator to make any acknowledgment, or take any step to prejudice the heir. Neither will a purchaser under the heir be disturbed at the will of the executor after an unreasonable lapse of time. Moores *v.* White, 6 J. Ch. Rep. 381. Ricord *v.* Williams, 7 Wheat. 60.

Besides these considerations, the record of the settlement in the probate court of Claiborne county, is a complete answer to the relief here sought. This settlement was made as early as 1804, and the balance then in the hands of the administrator was amply sufficient to have satisfied this claim.

Let the decree be affirmed.